DEPARTMENT OF TRANSPORTATION v BROWN

Docket No. 86939. Submitted June 12, 1986, at Lansing. Decided August 4, 1986.

Pearl Brown, an employee of the Department of Transportation, received a two-day suspension for leaving her job site one day. She filed a complaint with the Michigan Department of Labor alleging that she had been suspended for expressing safety concerns, in violation of the Michigan Occupational Safety and Health Act (MIOSHA). Brown also filed a grievance concerning her suspension pursuant to the collective bargaining agreement her collective bargaining unit had negotiated. That grievance was resolved in Brown's favor. Brown was fired more than a year later, following other complaints and allegations made about her by her co-workers. Brown filed another grievance through her collective bargaining unit, protesting her discharge. The grievance went to arbitration, where the arbitrator ruled that the grievance was not arbitrable because Brown was a probationary employee not entitled to arbitration under the collective bargaining agreement. In the meantime, the Department of Labor was investigating her MIOSHA complaint and finally concluded that the complaint could not be sustained. Brown appealed that decision, and a hearing officer determined that Brown had indeed been unlawfully discharged due to her complaints about job safety and ordered that she be offered reinstatement with full seniority and back pay and that she be given adequate training. The Department of Transportation filed a petition for review of the hearing officer's decision in Ingham Circuit Court, which affirmed the decision of the hearing officer, James T. Kallman, J. The Department of Transportation appealed. *Held:*

    1. The hearing officer's order in this matter does not violate

REFERENCES

Am Jur 2d, Civil Service §§ 52 *et seq.*

Am Jur 2d, Judgments §§ 394 *et seq.*

Effect of prior state agency adjudication upon court action for unlawful employment practices under § 706 of the Civil Rights Act of 1964 (42 USCS § 2000e-5). 20 ALR Fed 963.

See also the annotations in the Index to Annotations under Civil Service.

the exclusive authority of the Civil Service Commission to resolve disputes involving state classified civil service employees as set out in the Michigan Constitution. The prohibition of legislation for resolution of employment disputes of classified civil service employees does not extend to the area of occupational health and safety. The Michigan Occupational Safety and Health Act applies to employees of the classified civil service, and the Department of Labor has jurisdiction over claims made by aggrieved state classified employees under that act.

2. Petitioner's argument that the doctrines of collateral estoppel and res judicata apply in this situation to bar defendant's statutory claims before the Department of Labor is rejected. Application of those doctrines in this factual situation is inappropriate.

3. Petitioner was not denied procedural due process by the failure of the Department of Labor to follow statutory procedures in investigating and conducting hearings on Brown's complaint brought under MIOSHA.

4. The hearing officer's conclusion that Brown was discharged due to her complaints concerning job safety is supported by competent, material and substantial evidence.

Affirmed.

1. CIVIL SERVICE — HEALTH AND SAFETY DISPUTES — DEPARTMENT OF LABOR — MICHIGAN OCCUPATIONAL HEALTH AND SAFETY ACT.

The constitutional prohibition of legislation for resolution of employment disputes of classified civil service employees does not extend to the area of occupational health and safety; thus, the Michigan Occupational Safety and Health Act applies to employees of the classified civil service and the Department of Labor has jurisdiction over claims made by aggrieved state classified employees under that act (Const 1963, art 4, §§ 48 and 51; MCL 408.1065; MSA 17.50[65]).

2. WORDS AND PHRASES — RES JUDICATA.

The doctrine of res judicata provides that an action must have been decided on the merits before it will constitute a bar to a subsequent action.

3. ESTOPPEL — COLLATERAL ESTOPPEL.

The doctrine of collateral estoppel conclusively bars only issues actually litigated on the merits in a previous action.

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Larry F. Brya,* Assistant Attorney General, for petitioner.

*Maurer & Kalls* (by *George M. Maurer, Jr.,* and *John H. Willems*), for respondent.

Amicus Curiae:

International Union, UAW (by *Jordan Rossen,* General Counsel, and *Nancy Schiffer,* Associate General Counsel).

Before: BEASLEY, P.J., and D. F. WALSH and Hood, JJ.

BEASLEY, P.J., This case involves the complex employment history of respondent, Pearl Brown. On December 8, 1980, respondent was hired as a permanent employee by petitioner, the Department of Transportation. During the first sixteen months of her employment, respondent was injured several times on the job due to accidents allegedly caused by petitioner's failure to adequately instruct, train and supervise respondent. On May 18, 1981, respondent was not allowed to return to work after being treated for injuries she received on February 11, 1981. After writing a letter to the director of the Department of Transportation, respondent was finally allowed to return to work on March 1, 1982.

Upon her return to work, respondent increasingly demanded adequate safety training and instruction. Soon afterwards, hostilities developed between respondent and many of her co-workers. On March 15, 1982, respondent was assigned to pick-up roadside trash with two other employees. On the way to the job site, respondent realized that she had forgotten her work gloves, a necessary safety item. The other employees refused to

radio the garage for someone to bring her gloves to her. Since she was not authorized to use the radio or work without gloves, she left the job site and walked to a nearby house in an attempt to call the garage for her gloves. As a result of her actions, respondent was given a two-day suspension for leaving the job site.

Based on this incident, respondent filed a complaint with the Michigan Department of Labor (MDOL), alleging that petitioner had suspended her for expressing safety concerns, in violation of MCL 408.1065; MSA 17.50(65). On April 6, 1982, the MDOL informed petitioner that an investigation concerning respondent's allegations was to be conducted. However, since the MDOL was understaffed at the time, the investigation was not actively conducted until a year later.

Respondent also filed a grievance concerning her suspension pursuant to the collective bargaining agreement her collective bargaining unit had negotiated. The grievance was resolved in her favor. During the period from April, 1982, until May 2, 1983, respondent was sent home from work for four days for having inadequate safety boots. Also during this period, respondent was laid off for eight months and was then denied reemployment. Respondent filed grievances related to these incidents, always prevailed, and was always reinstated.

On May 2, 1983, respondent returned to work. She received four days' training in maintaining and cleaning highway rest stops. Her trainer did not feel that four days was an adequate training period. Respondent was later charged with improperly using a cleaning substance in the rest stops, which substance she had not been trained to use, but which she had observed her trainer using.

Respondent was also allegedly disruptive in an employee first aid class on May 19, 1983.

Based on these complaints and allegations made by her co-workers, respondent was fired on May 20, 1983. She was never given any specific reasons for her discharge. The discharge form merely cited "violation of rules" as a reason for the discharge. The reason for discharge was later changed to "unsatisfactory service." Petitioner did not perform an investigation into the allegations leading to respondent's discharge and respondent was never confronted with the allegations or given a chance to explain her conduct.

On May 31, 1983, respondent filed a grievance through her collective bargaining unit, protesting her discharge pursuant to the procedures provided by the collective bargaining agreement. The grievance was pursued to the arbitration stage but, after conducting a hearing, the arbitrator concluded that the grievance was not arbitrable. The arbitrator based his decision on the finding that respondent was a "probationary" status employee not entitled to arbitration under the collective bargaining agreement.

While respondent pursued her collective bargaining agreement grievance concerning her discharge, the MDOL was actively investigating her complaint alleging a violation of MCL 408.1065; MSA 17.50(65). On September 14, 1983, seventeen months after the original complaint based on the work glove incident was filed, the MDOL issued the results of its investigation in the matter. The investigation addressed the two-day suspension related to the work glove incident and two subsequent matters raised by respondent, one of which challenged her eventual discharge as a violation of the statute. The MDOL found:

Your complaint refers to three separate incidents wherein you allege that the Michigan Department of Transportation violated section 65(1) of the Act by suspending you for two days on March 25, 1982; continual harassment from supervision and co-workers; and your discharge of May 26, 1983 because you complained of unsafe conditions and your attempts to secure proper safety equipment. The department's determination regarding these matters is as follows.

1. Concerning the two day suspension the parties were able to resolve this issue with you receiving full payment for the two days lost. Therefore, no further action is warranted on this issue.

2. In regards to the continual harassment from supervision and co-workers, the department can find no relationship between the alleged harassment and the rights you exercised under Act 154. Therefore, this portion of your complaint is dismissed.

3. With respect to your discharge the department can find no connection between your complaint of March 26, 1982 and your discharge of May 26, 1983. Accordingly, this portion of your complaint cannot be sustained.

Respondent appealed the MDOL's initial determination in this matter. The hearing officer addressing this matter on appeal conducted three days of hearings. During these hearings, he allowed respondent to present evidence of events that occurred subsequent to the work glove incident to support her claim that her eventual discharge was unlawful under MCL 408.1065; MSA 17.50(65). After hearing all of the testimony, the hearing officer, on March 29, 1985, issued an extensive written opinion setting out his findings of fact and law and concluding that petitioner had unlawfully discharged respondent due to her complaints about job safety. The hearing officer expressly concluded:

It can only be concluded from all of the facts

that Complainant was in fact exposed to a deliber-
ate scheme to see that she was fired at all costs,
because she continued to exercise her rights.

The hearing officer ordered that respondent be
offered reinstatement with full seniority and back
pay from May 20, 1983, and that she be given
adequate training. Petitioner filed a petition for
review of the hearing officer's decision in the
circuit court. After reviewing petitioner's claims of
error, the circuit court affirmed the decision of the
hearing officer. Petitioner appeals as of right, rais-
ing four issues.

In its first argument, petitioner recognizes that
MCL 408.1065; MSA 17.50(65) provides in perti-
nent part:

> (1) A person shall not discharge an employee or
> in any manner discriminate against an employee
> because the employee filed a complaint or insti-
> tuted or caused to be instituted a proceeding under
> or regulated by this act or has testified or is about
> to testify in such a proceeding or because of the
> exercise by the employee on behalf of himself or
> herself or others of a right afforded by this act.
> (2) An employee who believes that he or she was
> discharged or otherwise discriminated against by a
> person in violation of this section may file a com-
> plaint with the department of labor alleging the
> discrimination within 30 days after the violation
> occurs. Upon receipt of the complaint, the depart-
> ment of labor shall cause an investigation to be
> made as it considers appropriate. If, upon the
> investigation, the department determines that this
> section was violated, the department shall order
> all appropriate relief, including rehiring or rein-
> statement of an employee to his or her former
> position with back pay.

In addition, we note that the statutory term
"person," as used in MCL 408.1065; MSA 17.50(65),
has been implicitly equated with the term "em-

ployer.""[1] MCL 408.1005(2); MSA 17.50(5)(2) expressly defines the term "employer" to include the state:

> "Employer" means an individual or organization, *including the state* or a political subdivision, which employs 1 or more persons. [Emphasis added.]

However, petitioner goes on to assert that allowing the MDOL to apply the statute to state classified civil service employees, such as respondent, improperly infringes on the broad authority of the Civil Service Commission to "regulate all conditions of employment in the classified service," as provided in Const 1963, art 11, § 5. More specifically, petitioner argues that the hearing officer's order in this matter violates the exclusive authority of the Civil Service Commission to resolve disputes involving state classified civil service employees as set out in Const 1963, art 4, § 48:

> The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service.

In addressing petitioner's argument, we first note that this Court has recently addressed the issue of the Civil Service Commission's exclusive authority to resolve disputes involving state classified employees in *Marsh v Civil Service Dep't*[2] and *Walters v Dep't of Treasury*.[3] In both *Marsh* and *Walters,* this Court concluded that the civil rights

---

[1] See *Schwartz v Michigan Sugar Co,* 106 Mich App 471, 480; 308 NW2d 459 (1981), lv den 414 Mich 870 (1982); *Ohlsen v DST Industries, Inc,* 111 Mich App 580, 584; 314 NW2d 699 (1981), lv den 417 Mich 1046 (1983).

[2] 142 Mich App 557; 370 NW2d 613 (1985), lv den 424 Mich 881 (1986).

[3] 148 Mich App 809; 385 NW2d 695 (1986).

act[4] applied to state classified employees, and, thus, a circuit court or the Civil Rights Commission can properly exercise jurisdiction over discrimination claims of state classified employees without violating the constitutional authority of the Civil Service Commission.

The Court in *Marsh* and *Walters* based its conclusions on the fact that the constitution expressly mandates the Legislature to implement constitutional provisions prohibiting discrimination and securing civil rights of all persons.[5] The *Marsh* Court also noted that the civil rights act expressly included the state as an employer without excluding classified employees.[6] In reading the applicable constitutional and statutory provisions together, both the *Marsh* Court and the *Walters* Court concluded that the classified civil service is not exempt from legislation prohibiting discrimination and securing civil rights in employment.

We believe the *Marsh* and *Walters* decisions are closely analogous to the situation presented in the within case. Although the MDOL is not expressly created by the constitution, as is the Civil Rights Commission, the constitution does require that the Legislature enact laws to protect the public health and safety:

> The public health and general welfare of the people of the state are hereby declared to be matters of primary public concern. The legislature shall pass suitable laws for the protection and promotion of the public health. [Const 1963, art 4, § 51.]

In enacting the Michigan Occupational Safety

---

[4] MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*

[5] *Marsh, supra,* pp 566-569, discussing Const 1963, art 5, § 29 and art 1, § 2.

[6] *Id.,* p 568, n 8.

and Health Act (MIOSHA),[7] the Legislature has complied with the constitutional command to protect and promote public health in the work place for all persons. Also, as in the civil rights act, the MIOSHA expressly includes the state as an employer without excluding classified employees.

In light of Const 1963, art 4, § 51, which directs the Legislature to protect and promote public health for all persons, we conclude that the prohibition of legislation for resolution of employment disputes of classified civil service employees[8] does not extend to the area of occupational health and safety. In reality, the Legislature in this situation is not providing for the resolution of employment disputes involving state classified employees, but is merely securing the health and safety of all employees. The classified civil service is not exempt from legislation prohibiting certain employer conduct toward employees raising health and safety complaints. Thus, the MIOSHA applies to employees of the classified civil service, and the MDOL has jurisdiction over claims made by aggrieved state classified employees under MCL 408.1065; MSA 17.50(65).

Next, petitioner argues that the doctrines of collateral estoppel and res judicata apply in this situation to bar respondent's statutory claims before the MDOL. In addressing this issue, we first note that petitioner completely failed to raise this claim below, either before the hearing officer or in the circuit court. Thus, appellate review of this claim is precluded unless the issue raised is one of law concerning which the necessary facts have been presented.[9]

---

[7] MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.*

[8] Const 1963, art 4, § 48.

[9] *Ledbetter v Brown City Savings Bank,* 141 Mich App 692, 702; 368 NW2d 257 (1985).

Upon our review of the record in this matter, we conclude that all the necessary facts have not been presented to allow for appellate review of petitioner's claim. Petitioner alleges that the arbitrator, in deciding that respondent's grievance brought under the collective bargaining agreement was not arbitrable, necessarily decided that petitioner had not violated MCL 408.1065; MSA 17.50(65). We disagree.

Although it is true that the arbitrator determined that respondent's union had failed to allege "unlawful discrimination" against respondent which would allow for arbitration in this grievance situation involving a probationary employee, it is completely unclear if such a determination addressed the merits of respondent's claim that she was discharged for making safety complaints. The arbitrator never explained what type of "unlawful discrimination" was required to be alleged in order to allow arbitration. In fact, the arbitrator, in making his decision in this matter, expressly stated that he was barred from reaching the merits in the matter since the parties had introduced only highly technical procedural questions.

We believe that the application of both the doctrine of collateral estoppel and the doctrine of res judicata is inappropriate in this factual situation. Under the doctrine of res judicata, for a prior judgment to constitute a bar to a subsequent action, the former action must have been decided on the merits.[10] In addition, the doctrine of collateral estoppel conclusively bars only issues "actually litigated" on the merits in the first action.[11] On appeal, petitioner has failed to point to facts in the record which allow for an inference that the arbi-

[10] *Admiral Merchants Motor Freight, Inc v Dep't of Labor,* 149 Mich App 344, 350; 386 NW2d 193 (1986).

[11] *Cogan v Cogan,* 149 Mich App 375, 379; 385 NW2d 793 (1986).

trator addressed the merits of respondent's claim under MCL 408.1065; MSA 17.50(65). Therefore, we conclude that petitioner is precluded from raising this issue for the first time on appeal.

Next, petitioner argues that it was denied its right to procedural due process by the failure of the MDOL to follow statutory procedures in investigating and conducting hearings on respondent's complaint brought under MCL 408.1065; MSA 17.50(65). Specifically, petitioner points to the fact that MDOL failed to investigate respondent's complaint and make a determination within ninety days after receiving the complaint, as required by MCL 408.1065(3); MSA 17.50(65)(3). Petitioner also claims that the hearing officer, by not confining himself to addressing only evidence related to the glove incident included in the original complaint, violated § 71(2)(d) of the Administrative Procedures Act.[12] That statute requires that the parties be given reasonable notice of the hearing, which notice shall include a short and plain statement of the matters asserted.

Petitioner concludes that these failures on the part of the MDOL to follow statutory procedures denied it procedural due process. Under the facts presented in this case, we disagree. First, we note that petitioner has completely failed to show that any material prejudice resulted from the MDOL's delay in investigating respondent's initial complaint. In fact, petitioner stipulated to the facts expressly included in respondent's original complaint, which included only the glove incident, at the time of the hearings conducted in this matter. Thus, we conclude that the delay in reaching a determination on the initial glove incident complaint did not violate petitioner's right to procedural due process.

---

[12] MCL 24.271(2)(d); MSA 3.560(171)(2)(d).

Furthermore, the fact that the initial complaint did not include respondent's allegations related to her eventual discharge did not deny petitioner its procedural due process right when the facts surrounding respondent's discharge were considered by the hearing officer. The record clearly indicates that petitioner had adequate notice that the MDOL was considering the entire time period from the glove incident to respondent's dismissal in investigating her complaint. The initial outcome of the MDOL investigation, which was in petitioner's favor, clearly indicated that the facts surrounding respondent's discharge had been investigated and considered. Also, in initially addressing respondent's appeal in this matter and in addressing her motion to subpoena witnesses for the hearing who would testify about events that occurred after the glove incident, the hearing officer made it clear that all the events concerning respondent's employment with petitioner would be considered.

In this situation, we believe that petitioner was given reasonable and adequate notice which allowed it to fully prepare for the MDOL proceeding related to respondent's complaint. The MDOL's procedures in this matter substantially and effectively complied with the notice requirement in MCL 24.271(2)(d); MSA 3.560(171)(2)(d). Furthermore, we find that petitioner's claims of denial of procedural due process are without factual merit. Even if we assume that petitioner state agency is a "person" that has property or liberty interests protected by the due process clauses of the United States and Michigan Constitutions,[13] we conclude that petitioner received adequate notice of the nature of the proceedings so as not to be denied procedural due process in this matter.

[13] US Const, Am XIV; Const 1963, art 1, § 17.

Last, petitioner claims that the hearing officer's conclusion that respondent was discharged due to her complaints concerning job safety was not supported by competent, material and substantial evidence on the whole record. Thus, petitioner argues that reversal is required under MCL 24.306(1)(d); MSA 3.560(206)(1)(d). We disagree.

After review of the record as a whole, we find that the hearing officer's conclusion is supported by competent, material and substantial evidence. The testimony at the hearings clearly indicated that respondent and petitioner had a long history of antagonistic employee/employer relations. The testimony also reveals that this antagonistic relationship, which eventually led to respondent's discharge, resulted in part from petitioner's failure to adequately train respondent and provide for her job safety and respondent's complaints concerning these failures. This competent, material and substantial evidence supports the hearing officer's conclusion that respondent was discharged due to her complaints concerning job safety and that petitioner had, therefore, violated MCL 408.1065; MSA 17.50(65) in discharging respondent.

Affirmed.